**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BARRY C. HONIG, GRQ CONSULTANTS, INC., and RENEE HONIG FAMILY FOUNDATION, INC.** | § | |
| ***Plaintiffs*,** | § | **Case No. 3:26-cv-01167-S** |
| **v.** | § | **(Consolidated with 3:26-cv-1803-S)** |
| **ANSON FUNDS MANAGEMENT LP, ANSON ADVISORS INC., MOEZ KASSAM, SUNNY PURI, RYAN CHOI, and DOES 1-10,** | § | |
| ***Defendants*.** | § | |

**DEFENDANT ANSON FUNDS MANAGEMENT LP'S MOTION TO DISMISS BARRY C. HONIG, GRQ CONSULTANTS, INC., AND RENEE HONIG FAMILY FOUNDATION, INC.'S COMPLAINT AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

A. Left and Citron publish statements about PolarityTE in 2018........ 3

B. The two Citron Reports were widely disseminated online in 2018. ........ 4

C. PolarityTE's stock price dropped immediately following the public Citron reports. .. 4

PROCEDURAL HISTORY ........ 5

ARGUMENTS & AUTHORITIES........ 5

I. Plaintiffs Do Not Have Standing to Bring Any of the Claims in the SAC........ 6

II. Plaintiffs' Claims Are All Time Barred and No Exception Applies........ 9

A. Plaintiffs' claims accrued when Citron published its reports in 2018........ 10

B. Plaintiffs' alleged injury and the identity of the speaker were publicly known in 2018, and therefore the discovery rule cannot apply. ........ 10

III. The SAC Fails to Make Allegations Specific to AFM in Violation of Rules 8 and 9(b). 13

A. Plaintiffs' claims sound in fraud and therefore are subject to heightened pleading standards. ........ 13

B. Plaintiffs rely on group pleading, falling well short of Rule 9(b)'s requirement....... 14

IV. The SAC Should Be Dismissed for Failure to State a Claim. ........ 17

A. Plaintiffs fail to state a claim for business disparagement........ 18

B. Plaintiffs fail to state a claim for tortious interference. ........ 21

C. Plaintiffs fail to state claims for negligence and gross negligence........ 22

D. Plaintiffs fail to state a claim for civil conspiracy........ 25

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
580 S.W.3d 136 (Tex. 2019)....9

*AHBP LLC v. Lynd Co.*,
649 F. Supp. 3d 371 (W.D. Tex. 2023)....19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....17

*Austin v. Kroger Texas L.P.*,
746 F.3d 191 (5th Cir. 2014)....22

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*,
976 F.3d 585 (5th Cir. 2020)....8, 11, 19

*Bass v. United Dev. Funding, L.P.*,
No. 05-18-00752-CV, 2019 WL 3940976 (Tex. App.—Dallas Aug. 21, 2019, pet. denied)....18, 19

*Bautista v. Capital One Fin. Corp.*,
No. 3:24-CV-03010-N-BT, 2025 WL 2412932 (N.D. Tex. July 25, 2025)....15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....17, 18, 21

*Bryant v. Bank of Am., N.A.*,
No. 3:15-CV-3818-B, 2016 WL 3523775 (N.D. Tex. June 27, 2016)....8

*Calbillo v. Cavender Oldsmobile, Inc.*,
288 F.3d 721 (5th Cir. 2002)....23

*Charalambopoulos v. Grammer*,
No. 3:14-CV-2424-D, 2017 WL 606639 (N.D. Tex. Feb. 15, 2017)....23

*Cohen v. Stevanovich*,
722 F. Supp. 2d 416 (S.D.N.Y. 2010)....20

*Crocker v. Fed. Deposit Ins. Corp.*,
826 F.2d 347 (5th Cir. 1987)....6

*Crooks v. M1 Real Est. Partners, Ltd.*,
238 S.W.3d 474 (Tex. App.—Dallas 2007, pet. denied)....16

*Edwards v. McDermott Int'l, Inc.*,
No. 4:18-CV-04330, 2023 WL 5916598 (S.D. Tex. Sept. 11, 2023) ....................................... 7

*Elson v. Black*,
56 F.4th 1002 (5th Cir. 2023) ............................................................................................. 14

*Energium Health v. Gabali*,
No. 3:21-CV-2951-S, 2023 WL 6392631 (N.D. Tex. Sept. 29, 2023) .................................... 25

*Farlow v. Harris Methodist Fort Worth Hosp.*,
284 S.W.3d 903 (Tex. App.—Ft. Worth 2009, pet. denied).................................................. 16

*Feldman v. Cutaia*,
951 A.2d 727 (Del. 2008) .................................................................................................. 7, 9

*Frank v. Bear, Stearns & Co.*,
11 S.W.3d 380 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ................................... 23

*Glassdoor, Inc. v. Andra Group, LP*,
575 S.W.3d 523 (Tex. 2019)........................................................................................... 10, 12

*Gomez v. Galman*,
18 F.4th 769 (5th Cir. 2021) ........................................................................................... 17, 23

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) .......................................................................................... 22, 23

*Greater Houston Transp. Co. v. Phillips*,
801 S.W.2d 523 (Tex. 1990)................................................................................................. 23

*Harrison v. Aztec Well Servicing Co.*,
No. 1:20-CV-038-H, 2020 WL 5514129 (N.D. Tex. Sept. 14, 2020) ............................... 19, 20

*Honig v. Left*,
No. DC-26-10616 (68th Dist. Ct., Dallas County, Tex. June 10, 2026).................................. 5

*In re Acis Cap. Mgmt., L.P.*,
604 B.R. 484 (N.D. Tex. 2019), *aff'd*, 850 F. App'x 302 (5th Cir. 2021)................................ 6

*In re First Interstate Bancorp Consol. S'holder Litig.*,
729 A.2d 851 (Del. Ch. 1998)................................................................................................. 9

*In re Parkcentral Glob. Litig.*,
884 F. Supp. 2d 464 (N.D. Tex. 2012) .................................................................................. 17

*In re UMTH General Services, L.P.*
725 S.W.3d 424 (Tex. 2025)................................................................................................... 7

*Kirk v. Precis, Inc.*,
No. 2-05-297-CV, 2006 WL 3627119 (Tex. App.—Ft. Worth Dec. 14, 2006, pet. denied)....23

*Klein & Assocs. Pol. Rels. v. Port Arthur Indep. Sch. Dist.*,
92 S.W.3d 889 (Tex. App.—Beaumont 2002, pet. denied)....24

*Labaty v. UWT, Inc.*,
121 F. Supp. 3d 721 (W.D. Tex. 2015)....12

*Lusk v. Foxmeyer Health Corp.*,
129 F.3d 773 (5th Cir. 1997)....16

*Nath v. Tex. Children's Hosp.*,
446 S.W.3d 355 (Tex. 2014)....9

*Nix v. Major League Baseball*,
62 F.4th 920 (5th Cir. 2023)....22

*Oliphint v. Richards*,
167 S.W.3d 513 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)....24

*Pace v. Cirrus Design Corporation*,
93 F.4th 879 (5th Cir. 2024)....14

*Painter v. Amerimex Drilling I, Ltd.*,
561 S.W.3d 125 (Tex. 2018)....16

*Rimkus Consulting Grp., Inc. v. Cammarata*,
688 F. Supp. 2d 598 (S.D. Tex. 2010)....18

*Riverside Strategic Capital Fund I, L.P. v. CLG Investments, LLC*,
722 S.W.3d 27 (Tex. Bus. Ct. 2025)....10

*Sims v. Dallas Indep. Sch. Dist.*,
No. 3:23-CV-00010-N, 2024 WL 495259 (N.D. Tex. Feb. 7, 2024)....20

*Smith v. Textile Rental Servs. Ass'n*,
No. 3:20-CV-3178-B, 2021 WL 3565578 (N.D. Tex. Aug. 12, 2021)....19

*Smith v. Waste Mgmt., Inc.*,
407 F.3d 381 (5th Cir. 2005)....6, 7, 9

*Steinhagen v. MC Trilogy Tex., LLC*,
733 S.W.3d 80, 89 (Tex. App.—Dallas 2025, pet. denied)....10, 11

*Tacon Mech. Contractors, Inc. v. Aetna Cas. & Sur. Co.*,
65 F.3d 486 (5th Cir. 1995)....24

*Tummel v. Milane*,
787 F. App'x 226 (5th Cir. 2019) ....................25

*Unimobil 84, Inc. v. Spurney*,
797 F.2d 214 (5th Cir. 1986) ....................14

*United States v. Palmer*,
578 F.2d 144 (5th Cir. 1978) ....................6

*Velocity Databank, Inc. v. Shell Offshore, Inc.*,
456 S.W.3d 605 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)....................12

*VeroBlue Farms USA, Inc. v. Wulf*,
465 F. Supp. 3d 633 (N.D. Tex. 2020) ....................14

*Vice v. Kasprzak*,
318 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)....................19

*Walker v. Beaumont Indep. Sch. Dist.*,
938 F.3d 724 (5th Cir. 2019) ....................21

*WickFire, L.L.C. v. Woodruff*,
989 F.3d 343 (5th Cir. 2021) ....................21, 22

*Williams v. WMX Technologies, Inc.*,
112 F.3d 175 (5th Cir. 1997) ....................14

**Statutes**

Tex. Bus. Orgs. Code Ann. § 1.002(35)(A)(ii)....................16

Tex. Civ. Prac. & Rem. Code § 16.003(a)....................9

**Other Authorities**

Biotech's Shares Tumble After It Says SEC Is Looking into Possible
Manipulation, CNBC (Mar. 18, 2019)....................21

Fed. R. Civ. P. 9(b) .................... *passim*

Fed. R. Civ. P. 8(a) .................... *passim*

Fed. R. Civ. P. 12(b)(6).................... *passim*

*In re PolarityTE, Inc.*,
No. 23-22358-KRA, ECF No. 149 (Bankr. D. Utah June 6, 2023)....................8

*In re PolarityTE, Inc. Sec. Litig.*,
No. 2:18-cv-00510-HCN, ECF No. 49 (D. Utah)....................19

PolarityTE, Inc., Current Report (Form 8-K) (August 18, 2023) .....7

PolarityTE, Inc., Current Report (Form 8-K), Ex. 99.1 (July 25, 2018) .....11

PolarityTE, Inc., Transition Report (Form 10-KT) (Mar. 18, 2019) .....10, 21

PolarityTE, Inc., Annual Report (Form 10-K) (Mar. 30, 2022) .....8

Press Release, SEC, *SEC Charges Microcap Fraudsters for Roles in Lucrative Market Manipulation Schemes* (Sept. 7, 2018).....20

## INTRODUCTION

In this action, Plaintiffs attempt to resurrect a putative securities claim from 2018 that expired years ago on the basis of claims they do not have standing to bring. And even if these securities claims dressed up as state tort claims were timely and could be brought by Plaintiffs, Plaintiffs fail to successfully plead any claims against Anson Funds Management LP ("**AFM**"). For these and other reasons, the claims against AFM should be dismissed.

As a threshold dispositive matter, Plaintiffs do not have standing to bring any of the claims in the Second Amended Complaint ("**SAC**"). Plaintiffs seek to recover for losses that they allegedly suffered as shareholders of a formerly public company named PolarityTE, Inc. ("**PolarityTE**"), based on public reports made and disseminated by Andrew Left and his company Citron Research ("**Citron**") in the summer and fall of 2018. According to Plaintiffs, those public reports by Left and Citron allegedly caused PolarityTE's stock price to quickly decline in 2018, impaired the company's ability to raise capital, and ultimately contributed to its bankruptcy several years later—despite PolarityTE's clear, disclosed view that its operating issues and eventual bankruptcy were caused by other unrelated factors. Plaintiffs cannot recover against AFM on the basis of this alleged harm. The alleged injury was suffered by PolarityTE and any resulting diminution in shareholder value was merely derivative of the harm allegedly inflicted on the company. Any claims related to the impact of Citron's publications on either PolarityTE's stock price or its standing in the market belonged to the corporation itself and could only have been pursued, if at all, by the company. Individual shareholders do not have standing to bring claims that derive from their status as a shareholder of an allegedly harmed company. Plaintiffs cannot circumvent these long-standing principles by repackaging the alleged injury to PolarityTE as Plaintiffs' own state tort claims. Each of the claims against AFM fails for this reason alone.

Plaintiffs' claims also fail for the independent reason that they brought them years too late. The statute of limitations for each of Plaintiffs' claims is, at most, two years. The events giving rise to Plaintiffs' claims occurred in 2018, nearly eight years before this action was filed, and the discovery rule—an exception to the applicable limitations periods—does not apply. The SAC makes clear that Plaintiffs' claims are time barred. The SAC admits that the reports from Citron and Left that allegedly harmed PolarityTE were published and widely disseminated in June and October 2018 (the "**Citron Reports**") and caused an immediate decline in PolarityTE's stock price. Plaintiffs knew of this alleged injury in 2018. They knew what caused the harm (the allegedly inaccurate statements in the Citron Reports) and who caused it (Citron and Left). To the extent Plaintiffs or PolarityTE had a claim, that claim accrued in 2018, Plaintiffs could have brought their suit then, and any limitations period expired in 2020, at the latest.

Plaintiffs attempt to salvage their stale claims by pointing to government actions taken years later. But government actions do not transform publicly known events from 2018 into newly discovered injuries. Plaintiffs' own allegations in the SAC establish that they did not act with diligence to pursue claims they have known about since 2018. Accordingly, Plaintiffs' claims are all time barred and should be dismissed on that basis alone.

Plaintiffs also fail to plead their claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs repeatedly accuse Defendants of participating in a fraudulent "short-and-distort" securities scheme. Even though they do not bring a claim for fraud, the gravamen of Plaintiffs' SAC is that Defendants allegedly participated in a fraud-on-the-market "scheme." As such, Plaintiffs' claims sound in fraud, and must comply with the requirements of both Rule 8 and Rule 9(b). Plaintiffs fail to do either. Plaintiffs do not allege with specificity what AFM itself supposedly did, or why it would be liable for any of Plaintiffs' alleged claims. Instead, Plaintiffs lump all of the "Defendants" together, attribute conduct to all of them collectively—despite pleading and

acknowledging their separate corporate existence—and then combine those conclusory allegations with other allegations pled "on information and belief." These vague allegations fail to plead any alleged fraud with particularity as to AFM, and certainly do not put AFM on notice as to what it is alleged to have done.

Finally, Plaintiffs' claims against AFM fail because they do not state a plausible claim for relief on any of the causes of action alleged, for the following reasons:

- **Business Disparagement –** All but one of the allegedly disparaging statements concerned PolarityTE, not Plaintiffs, and AFM is not alleged to have made any disparaging statements. And the single identified statement concerning Plaintiff Barry Honig is not actionable as a matter of law.

- **Tortious Interference –** Plaintiffs identify no obligatory contractual provision that has been breached as a result of any alleged action by AFM.

- **Negligence and Gross Negligence –** Plaintiffs fail to adequately allege that AFM owed them any legal duty or committed any negligent act. And, Plaintiffs are barred as a matter of law from repackaging their failed business disparagement claim as negligence.

- **Conspiracy –** Plaintiffs have not adequately alleged either the existence of a conspiracy or AFM's participation in one. Moreover, civil conspiracy requires a viable underlying tort claim, which Plaintiffs do not have. Therefore, the conspiracy claim necessarily fails as well.

## FACTUAL BACKGROUND

This action arises from two reports published by Citron and Left in June and October 2018 concerning PolarityTE that allegedly contained inaccurate statements. *See* SAC ¶¶ 87–103. Plaintiffs seek to recover for losses they allegedly suffered from the drop in PolarityTE's stock price as a result of these reports. *See id.* ¶¶ 104–107. AFM is not alleged to have published any report. *See id.* ¶ 32.

### A. *Left and Citron publish statements about PolarityTE in 2018.*

Plaintiffs allege that Left published reports "recommending investment ideas," and had been doing so under the name "Citron Research" since 2008. *Id.* ¶ 37. On June 25, 2018, Citron Research published a report regarding PolarityTE on Citron Research's website and associated Twitter account regarding the status of the company's patent application on its sole potential patent—which had

allegedly been the subject of a final rejection from the U.S. Patent and Trademark Office ("USPTO")—and Citron Research's opinion regarding the impropriety of PolarityTE's disclosures and trading practices. *See id.* ¶¶ 87–89. Then, on October 18, 2018, Citron Research published another report regarding PolarityTE's patent application and the communications the company received from the Food and Drug Administration ("FDA"). *Id.* ¶¶ 94, 96–97.[1] According to Plaintiffs, Citron then also posted this second report on Twitter. *Id.* ¶ 95.

### B. *The two Citron Reports were widely disseminated online in 2018.*

Plaintiffs admit that Left and Citron's reports enjoyed wide, immediate public dissemination "via online social media and traditional news media, appearances on cable news programs, interviews, and mainstream news articles." *Id.* ¶ 2. Both the June and October 2018 reports were posted on Twitter. *See id.* ¶¶ 87, 95. Plaintiffs even note that "Left had more than one hundred thousand followers on Twitter," that his "tweets often were picked up by other media outlets and quickly repeated to a much wider audience," and that Left "frequently appeared on media broadcasts such as CNBC where he would discuss the recommendations he had published through Citron Research." *Id.* ¶¶ 46–47. Plaintiffs also acknowledge that "Left disseminated stock recommendations through multiple channels, including reports posted on his website (CitronResearch.com), email blasts to subscribers, and via the Twitter platform using Citron's twitter feed, @CitronResearch," noting their "wide dissemination." *Id.* ¶¶ 45, 49.

### C. *PolarityTE's stock price dropped immediately following the public Citron reports.*

Plaintiffs allege that just one day following Left's publication of the first Citron Report, the market value of PolarityTE stock declined by over 33%, and nearly 50% within a week. *Id.* ¶ 92. Plaintiffs allege that following the Citron Reports, PolarityTE's stock price "immediately declined over

[1] Plaintiffs admit that PolarityTE's patent application was, in fact, rejected in what the USPTO termed a "Final Rejection," describing that label as an "unfortunate misnomer." *Id.* ¶¶ 75–77. Plaintiffs also admit that PolarityTE received a letter from the FDA. They disagree with Left and Citron's interpretation of that letter. *See id.* ¶¶ 98–99.

40%" and sent the company "into a downward spiral," involving a securities class action lawsuit, loss of institutional financing, and "eventually" bankruptcy proceedings several years later. *Id.* ¶ 4.

## PROCEDURAL HISTORY

Plaintiffs filed their first complaint on April 10, 2026. They initially included Citron Capital, LLC and Citron Capital LP as defendants but, following certain *sua sponte* orders from this Court, Plaintiffs removed the Citron entities from the action on May 6, 2026. After another order from the Court, Plaintiffs filed the SAC on May 27, 2026. They did not serve AFM until June 11, 2026. Now, the only parties that remain are defendants, like AFM, that did not make any of the allegedly inaccurate statements about PolarityTE. Notably, Plaintiff Honig is simultaneously pursuing an action in state court in Dallas County against similar defendants, including AFM, stemming from the same underlying allegations. *See Honig v. Left*, No. DC-26-10616 (68th Dist. Ct., Dallas County, Tex. June 10, 2026).

Defendant AFM is alleged to be a Texas-based investment adviser. SAC ¶ 11. AFM is alleged to be one of two investment advisers who provide investment advice to certain pooled investment vehicles. *Id.* ¶ 13. Plaintiffs allege that Anson Advisors Inc. ("**AAI**"), a separate Canadian investment adviser, also advises the pooled investment vehicles. *Id.* Plaintiffs allege that AFM is managed by a single partner, Anson Management GP LLC, that "Anthony Moore and Bruce Winson are the members and managers of Anson Management," and that Moore and Winson are "domiciled in, and therefore [citizens] of, Texas." *Id.* ¶ 11. None of Anson Management GP LLC, Moore, or Winson, are parties to this action or are otherwise mentioned with regard to any of the conduct that forms the basis of Plaintiffs' claims.

## ARGUMENTS & AUTHORITIES

The claims against AFM in the SAC should be dismissed with prejudice for at least four reasons. First, Plaintiffs lack standing to bring this action, which seeks to rectify harm suffered by

PolarityTE. Plaintiffs' claims are derivative and belonged to PolarityTE—not Plaintiffs. Second, all of Plaintiffs' claims are time barred. Third, Plaintiffs fail to allege any misconduct by AFM, instead relying on impermissible group pleading in violation of Rule 9(b) and Rule 8. Finally, Plaintiffs fail to plead any claim upon which relief can be granted.

## I. Plaintiffs Do Not Have Standing to Bring Any of the Claims in the SAC.

Plaintiffs' claims should be dismissed because Plaintiffs, as shareholders, lack standing to assert direct claims for a wrong done solely to PolarityTE. Here, Plaintiffs purport to assert claims to recover for alleged harm done to PolarityTE—resulting in a diminution of value in their shares in the company. Plaintiffs' claims are barred under the shareholder standing rule.

The shareholder standing rule "prohibits shareholders from initiating actions to enforce the rights of the corporation," unless the shareholder asserts a claim derivatively on behalf of the corporation. *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 507 (N.D. Tex. 2019), *aff'd*, 850 F. App'x 302 (5th Cir. 2021); *see also United States v. Palmer*, 578 F.2d 144, 145–46 (5th Cir. 1978) ("The law is clear that only a corporation and not its shareholders, not even a sole shareholder, can complain of an injury sustained by, or a wrong done to, the corporation."). Where, as here, a shareholder improperly asserts a claim belonging to a corporation, dismissal under Rule 12(b)(6) is appropriate. *See Crocker v. Fed. Deposit Ins. Corp.*, 826 F.2d 347, 349–50 (5th Cir. 1987) (reversing district court's denial of 12(b)(6) motion to dismiss for lack of standing because, under relevant state law, "a shareholder does not have standing to bring a direct cause of action when the only damage alleged is a diminution in the value of corporate shares").

The law of the state of incorporation determines whether the shareholder standing rule bars a claim. *See Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384 & n.1 (5th Cir. 2005). PolarityTE is

incorporated in Delaware,[2] so Delaware law applies in determining whether a claim is derivative. *See id.*; *Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-04330, 2023 WL 5916598, at *5–6 (S.D. Tex. Sept. 11, 2023), *report and recommendation adopted*, 2025 WL 4477415 (S.D. Tex. Mar. 7, 2025) (applying Delaware law).

Under Delaware law, the shareholder standing analysis "must be based solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Smith*, 407 F.3d at 384 (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004)). As to the first question, the stockholder's claimed injury "*must be independent of any alleged injury to the corporation*." *Id.* In other words, the stockholder "must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail *without showing an injury to the corporation.*"[3] *Id.* The central question is who suffered the harm. Suits for injuries to a corporation must be brought by the corporation itself or derivatively on its behalf—not an individual shareholder. *See id.*; *Feldman v. Cutaia*, 951 A.2d 727, 735 (Del. 2008).

Plaintiffs cannot meet that standard because their claims are based on alleged harm to PolarityTE. Plaintiffs allege that Citron published false and misleading statements about PolarityTE, including that "PolarityTE's patent application was 'dead on arrival,'" that "notices regarding the status of the patent application were 'hidden' by PolarityTE," and that "the FDA had 'proven' that PolarityTE was a 'stock scheme.'" SAC ¶¶ 88, 101. Plaintiffs allege that Citron's statements caused "the price of

---

[2] *See* PolarityTE, Inc., Current Report (Form 8-K) (August 18, 2023), available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/0001076682/000149315223029459/form8-k.htm.

[3] The same is true under Texas law: "[a] shareholder generally 'cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong.'" *In re UMTH General Services, L.P.*, 725 S.W.3d 424, 430 (Tex. 2025) (quoting *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 775 (Tex. 2020)) ("[S]uits for injuries to a corporation—including claims for diminution in stock value—ordinarily must be brought by the corporation itself or derivatively on its behalf.").

PolarityTE's stock [to] drop[]" and that their "overhang" impacted "PolarityTE's ability to raise funding," which "eventually forced the company to declare bankruptcy in June 2023." *Id.* ¶¶ 102–03.[4]

With respect to Plaintiffs' business disparagement claim, Plaintiffs allege that Defendants made "false and disparaging statements about PolarityTE's and Plaintiffs' business," and as a result, Plaintiffs suffered a "loss in the value of their holdings."[5] *Id.* ¶¶ 5, 122. Similarly, Plaintiffs' claim for tortious interference alleges that Defendants interfered with Plaintiffs' contracts "by improperly directing or causing the publication of false, negative information about PolarityTE, *which affected the market price of PolarityTE stock*." SAC ¶ 132 (emphasis added). Plaintiffs' claims for negligence and gross negligence also depend on alleged harm to PolarityTE because Plaintiffs allege, and must show, that Defendants' publication of negative news was "designed to cause the market price of PolarityTE to rapidly decline," and resulted in "injury to the Plaintiffs" including the sale of shares at "very depressed prices affected by Defendants' scheme" and Plaintiffs' alleged inability to sell the remaining shares "prior to PolarityTE's bankruptcy." *Id.* ¶¶ 137–38. Because Plaintiffs' claims require proof of harm to PolarityTE and Plaintiffs cannot prevail without showing a corresponding injury to the

---

[4] In PolarityTE's filings in its bankruptcy proceeding and with the U.S. Securities and Exchange Commission it suggested that the bankruptcy was due to a change in FDA guidance in 2021 that caused the company to stop selling its only revenue generating product. *See In re PolarityTE, Inc.*, No. 23-22358-KRA, ECF No. 149, at 5 (Bankr. D. Utah June 6, 2023) ("[B]ased on FDA guidance, since May 2021, the Debtors were forced to withdraw SkinTE from the commercial market and have been conducting the first of two more-rigorous clinical trials …. the Debtors were unable to continue to fund the clinical trials and would have shortly run out of cash were it not for the Chapter 11 Cases."); PolarityTE, Inc., Annual Report (Form 10-K), at 58 (Mar. 30, 2022) ("The FDA's stated period of enforcement discretion ended May 31, 2021. Consequently, the Company terminated commercial sales of SkinTE on May 31, 2021, and ceased its SkinTE commercial operations …. As a result, there are no product sales from commercial SkinTE after June 2021."), available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/0001076682/000149315222008097/form10-k.htm. The Court may take judicial notice of these documents when considering AFM's motion to dismiss. *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020); *see also Bryant v. Bank of Am., N.A.*, No. 3:15-CV-3818-B, 2016 WL 3523775, at *3 (N.D. Tex. June 27, 2016) ("The Court will also take judicial notice of matters of public record, such as bankruptcy filings and dockets.").

[5] Plaintiffs also allege, in a single conclusory sentence, that statements about "Plaintiff Honig were disparaging because, among other reasons, they falsely accused him of being a 'stock promoter' for 'failed companies.'" SAC ¶ 123. As discussed further in Section IV(A), Plaintiffs do not allege how statements about Plaintiff Honig personally constitute business disparagement, nor do Plaintiffs sufficiently allege any injury to Plaintiff Honig or Plaintiffs' business—let alone an injury separate from that to PolarityTE.

corporation, they are derivative claims and Plaintiffs lack standing to bring them directly. *See Feldman*, 951 A.2d at 732; *In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 864 (Del. Ch. 1998) ("Plaintiff Bradley's claim of injury is dependent upon his status as a stockholder of First Interstate and, for this reason, is simply too indirect to support a claim to recover in the place of the corporate entity . . . .").

Plaintiffs allege that they suffered damages in the amount of "millions of dollars of loss in the value of their holdings" as a result of the alleged fraudulent scheme. SAC ¶ 5. Specifically, Plaintiffs allege that following Citron's 2018 publications, they "were able to sell some of their [PolarityTE] shares at very depressed prices affected by Defendants' scheme" and could not sell the remainder before "PolarityTE's bankruptcy" five years later, in June 2023. *Id.* ¶ 107. Each of these alleged injuries did not injure Plaintiffs directly, "but instead only injured them indirectly as a result of their ownership of [the company's] shares." *Smith*, 407 F.3d at 385. Because Plaintiffs' alleged injury is simply a result of "their ownership of [the company's] shares," the injury is to the corporation—not Plaintiffs directly. *Id.* at 385–86 (holding that the plaintiffs' claims were derivative under Delaware law and explaining that in order to assert a direct claim, a shareholder must be able to "prevail without showing a corresponding injury to the corporation").

For these reasons, Plaintiffs lack standing to bring this action under the shareholder standing rule. Each of Plaintiffs' claims should be dismissed.

## II. Plaintiffs' Claims Are All Time Barred and No Exception Applies.

Each of Plaintiffs' claims—business disparagement, tortious interference, negligence, and gross negligence—are governed by a limitations period of no more than two years. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); *see also Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 370 (Tex. 2014). The statute of limitations of the conspiracy claim is the same as the underlying tort. *See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).

**A. *Plaintiffs' claims accrued when Citron published its reports in 2018.***

Under Texas law, a claim accrues when the claimant suffers "a legal injury." *Riverside Strategic Capital Fund I, L.P. v. CLG Investments, LLC*, 722 S.W.3d 27, 35 (Tex. Bus. Ct. 2025). This is true even if the injury is not immediately discovered, or if the resulting damages have not yet occurred. *Id.* "[C]laims for defamation and business disparagement," the Texas Supreme Court has explained, "generally accrue when the allegedly defamatory matter is published or circulated." *Glassdoor, Inc. v. Andra Group, LP*, 575 S.W.3d 523, 528 (Tex. 2019). Plaintiffs allege that the statements underlying their claims were made in June and October 2018, published publicly, and circulated online. SAC ¶¶ 87, 94. Upon their publication, Plaintiffs' clock started running. Accordingly, Plaintiffs' time to bring these claims expired no later than 2020.

**B. *Plaintiffs' alleged injury and the identity of the speaker were publicly known in 2018, and therefore the discovery rule cannot apply.***

Recognizing that their claims are time barred under a straightforward application of the applicable statute of limitations, Plaintiffs contend that the discovery rule excuses their lack of diligence. The discovery rule does not apply. The discovery rule is a "narrow exception to the legal-injury rule that generally governs accrual" and it applies "only if the *nature of the injury* is inherently undiscoverable and the evidence of injury is objectively verifiable." *Steinhagen v. MC Trilogy Tex., LLC*, 733 S.W.3d 80, 89 (Tex. App.—Dallas 2025, pet. denied) (emphasis added). To be inherently undiscoverable, the injury must be of a nature that is "unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* That is not the case here, where Citron's statements were highly publicized in 2018 and the claimed injury—associated with a decline in PolarityTE's stock price—was plainly visible to the company, the market, and Plaintiffs.[6] *See* SAC ¶¶ 45–49, 92, 102–

[6] PolarityTE's contemporaneous SEC filings confirm it was aware of the Citron Reports. *See* PolarityTE, Inc., Transition Report (Form 10-KT), at 42 (Mar. 18, 2019) ("We have been the target of what we believe to be manipulative short seller attacks and coordinated 'short and distort' campaigns, including, but not limited to, Citron Research, led by Andrew Left, Sharesleuth and Capital Forum, as well as anonymous persons and entities who post

103. Plaintiffs have pled themselves out of Court by admitting the pervasive reach and highly-public nature of the Citron Reports and the immediate—and public—nature of their alleged impact on PolarityTE's stock price. *See id.*

Indeed, Texas courts have recently refused to even apply the discovery rule to business disparagement claims that are premised on broadcasted media. *See Steinhagen*, 733 S.W.3d at 91 ("[W]e conclude that the discovery rule does not apply to MCT's defamation and business-disparagement claims based on the September 2021 broadcast."). *Steinhagen* is instructive here. There, the court explained:

> [plaintiff] argues that [defendant's] limitations argument fails because he adduced no evidence that the September 2021 broadcast was inherently discoverable or a **matter of public knowledge**. We reject this argument because the essential facts were supplied by the pleadings—[defendant] published the September 10, 2021 statement **on a publicly accessible YouTube channel**, and [plaintiff] actually discovered a subsequent [defendant] YouTube broadcast within a year after that broadcast.

*Id.* (emphasis added). The court held that permitting a plaintiff to bring their belated claim despite its wide public accessibility was "inconsistent with the policy of keeping the discovery rule a narrow exception to the general rules governing accrual for limitations purposes." *Id.*

As in *Steinhagen*, the Citron Reports were widely known as a "matter of public knowledge," with Plaintiffs admitting they were posted online and on Twitter—a popular, mainstream social media platform—in 2018. *Id.*; SAC ¶¶ 87, 94–95. Plaintiffs also knew the speaker. Plaintiffs were keenly

---

and/or publish what we believe to be coordinated, deliberately and purposefully false materials on or within internet-based platforms …. We believe these materials, communications and 'short and distort' efforts to be highly coordinated with purposefully manipulative trading activities of our securities and have therefore monitored closely these events, which we do not tolerate."); *Id.* ("In June and October 2018, Citron published reports with what we believe to be false and misleading information about PolarityTE, including a narrative about Barry Honig and Michael Brauser …. Despite what we believe to be clear inaccuracies in each Citron report and the Capital Forum report, our stock price was significantly negatively affected following the release of each report."), available at: https://www.sec.gov/Archives/edgar/data/1076682/000149315219003515/form10-kt.htm; *see also* PolarityTE, Inc., Current Report (Form 8-K), Ex. 99.1 (July 25, 2018) ("[T]here have been unsubstantiated rumors regarding the company and its lead product, SkinTE, by short sellers and competitors."), available at: https://www.sec.gov/Archives/edgar/data/1076682/000149315218010424/ex99-1.htm. The Court may take judicial notice of these SEC filings when considering AFM's motion to dismiss. *See Basic Cap. Mgmt.*, 976 F.3d at 589.

aware of Left. Plaintiffs admit that Left had over 100,000 Twitter followers, issued opinions via Twitter that "often were picked up by other media outlets and quickly repeated to a much wider audience," and appeared on mainstream broadcasts such as CNBC. *See id.* ¶¶ 45–47.

Faced with the ramifications of their own delay, Plaintiffs allege that their lack of diligence can be excused because they did not know everyone who they now allege participated in the purportedly fraudulent "scheme." That is irrelevant. Under Texas law, the identity of the wrongdoer need not be known for the statute of limitations to run. Once a plaintiff "discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another" the statute of limitations commences "*even if the plaintiff does not know the exact identity of the wrongdoer*." *Glassdoor*, 575 S.W.3d at 530; *see also Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 745 (W.D. Tex. 2015) ("Knowing that one has a cause of action does not necessitate knowing 'the exact identity of the wrongdoer,' or awareness of all the potential defendants." (citations omitted)). In fact, in *Glassdoor*, the court dismissed a business disparagement claim, holding "that the statute of limitations barred [the plaintiff's] potential claims against each of the ten ***anonymous*** reviewers no later than two years after it discovered their respective reviews." *Glassdoor*, 575 S.W.3d at 530 (emphasis added). That outcome is even more appropriate where, as here, the alleged harm was highly public and Plaintiffs knew the speakers. Plaintiffs knew about the Citron Reports, knew about the declining stock price, and knew about Left and Citron.

Plaintiffs attempt to cloud the timeline of when their alleged injury occurred by pointing to later government actions—claiming that it was not until 2024 that "the details of the scheme alleged herein" were revealed. SAC ¶ 119. But these later actions did not reset the clock. *See Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (discovery rule does not apply where defamatory statement is made "a matter of public knowledge through such agencies as newspapers or television broadcasts.") (collecting cases). The

Citron Reports—and the individual publishing the statements, Left—were publicly known in 2018, long before the announcements in 2024. Further, Plaintiffs effectively concede that they can bring their claims before knowing the identities of each party involved in the alleged scheme, as the SAC names ten Does as defendants in this action. *See* SAC ¶ 17. And PolarityTE itself—the actual owner of Plaintiffs' alleged claims—was certainly aware of the short reports.[7] PolarityTE's contemporaneous public statements and filings suggest that the company believed the statements to be false, putting the market (including Plaintiffs) on notice of a potential claim. Plaintiffs now plead ignorance—claiming that they did not learn the "details" of their claims until 2024. *See* SAC ¶ 119. But that position is inconsistent with the allegations in the SAC and publicly available disclosures from 2018 and 2019.

Despite knowing all of this, Plaintiffs sat on their alleged claims for years. Plaintiffs admit they knew of their injury and who allegedly caused it back in 2018. *See, e.g.*, *id.* ¶¶ 87, 92, 94–95, 102. Yet at no point from 2018 to 2026 did Plaintiffs show any diligence in pursuing their claims despite PolarityTE's public statements that the 2018 reports were false.[8] PolarityTE—the subject of the alleged harm—knew of the statements and disagreed with them at the time they were made. But PolarityTE itself chose not to bring suit. Now, after sitting on their alleged claims, Plaintiffs come to this Court eight years after the conduct and alleged injury at issue, asking for recovery on repackaged securities claims. Plaintiffs are at least six years too late and the discovery rule cannot save them. As a result, all of their claims should be dismissed.

## III. The SAC Fails to Make Allegations Specific to AFM in Violation of Rules 8 and 9(b).

### A. *Plaintiffs' claims sound in fraud and therefore are subject to heightened pleading standards.*

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be pleaded with particularity. Put differently, "the who, what, when, and where must be laid out *before* access to

[7] *See supra* note 6.
[8] *See supra* note 6.

the discovery process is granted." *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 178 (5th Cir. 1997) (emphasis in original). Rule 9(b) applies not only to claims expressly labeled as fraud, but also to any claim grounded in allegations of fraudulent conduct. *Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."); *see also Pace v. Cirrus Design Corporation*, 93 F.4th 879 (5th Cir. 2024) (holding that Rule 9(b)'s heightened pleading standard applied to a tort case stemming from an airplane crash); *VeroBlue Farms USA, Inc. v. Wulf,* 465 F. Supp. 3d 633 (N.D. Tex. 2020) (applying Rule 9(b) to claims for rescission, restitution, and declaratory relief because it applies based on the substance of the allegations rather than the label attached to the claim).

Because the SAC centers around allegedly false statements regarding PolarityTE made as part of an alleged fraudulent "scheme" to manipulate the market, Plaintiffs must meet the heightened pleading requirements of Rule 9. SAC ¶¶ 1, 56. The SAC repeatedly invokes "fraud" to describe both Defendants' alleged conduct and the harm suffered by Plaintiffs, and is expressly premised on Left's indictment, which alleged one count of "engaging in a securities fraud scheme" and "17 counts of securities fraud." SAC ¶ 109. Plaintiffs have attempted to plead a fraud-on-the-market theory under the guise of "business disparagement" and related tort claims, but have failed to do so with particularity. Accordingly, the claims against AFM should be dismissed.

**B. *Plaintiffs rely on group pleading, falling well short of Rule 9(b)'s requirement.***

The SAC fails to plead the circumstances of the alleged fraud with particularity as to AFM. In fact, the SAC fails to plead virtually anything with regard to AFM, relying instead on alleged actions by "Defendants." This type of group pleading is impermissible under Rule 9(b). The law is clear: "[g]eneral allegations, which do not state with particularity what representations each defendant made, do not meet [the particularity] requirement." *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986). Courts in this Circuit routinely dismiss complaints that fail to attribute specific conduct to

specific defendants as impermissible shotgun pleadings. *See Bautista v. Capital One Fin. Corp.*, No. 3:24-CV-03010-N-BT, 2025 WL 2412932, at *5 (N.D. Tex. July 25, 2025), *report and recommendation adopted*, 2025 WL 2410350 (N.D. Tex. Aug. 19, 2025).

The SAC attributes nearly all allegedly wrongful conduct to "Defendants" collectively or, at times, to "Anson," without distinguishing between AFM, AAI, Kassam, or Puri (or Choi or the Doe Defendants), or identifying the conduct each defendant is alleged to have engaged in. This includes who allegedly participated in the scheme, established short positions, published drafts, launched attacks, concealed information, covered short positions, made false statements, coordinated with third parties, acted with knowledge of falsity, or intended to harm Plaintiffs. *See, e.g.,* SAC ¶¶ 56–69, 86–87, 90, 93, 100, 122, 124–25, 132, 137, 142.[9] The SAC repeatedly relies on collective allegations against groups of defendants and other assertions made only "[o]n information and belief." *See, e.g.*, *id.* ¶¶ 14–16, 25, 60, 85–86, 93, 111. Even more concerning is the complete absence of any relevant allegations about AFM, which the SAC acknowledges is a separate legal entity from AAI. *See id.* ¶¶ 11–12. The SAC contains no allegation that AFM made any statement about Plaintiffs or PolarityTE. And not a single allegation about "Anson" or "Anson Funds" is specifically attributed to AFM. At base, Plaintiffs attempt to shoehorn AFM into this suit via allegations against others, presumably to establish jurisdiction and venue in this Court.

In conclusory fashion, Plaintiffs allege that Moez Kassam is a "director" of both "Anson Advisors" and "Anson Funds," without ever explaining what actions he purportedly took on behalf of either entity. *Id.* ¶ 24. Even assuming that label is accurate, it cannot carry Plaintiffs' pleading burden.

[9] Plaintiffs effectively concede that they do not know the participants in the alleged scheme. The SAC alleges that Plaintiffs "hope to confirm though [*sic*] discovery" the identities of others involved and repeatedly asserts that "discovery will reveal" other participants. SAC ¶¶ 36, 85, 137, 141. But Rule 9(b) requires pleading the particulars of the alleged fraud before obtaining discovery. It does not permit discovery to be used to hunt for the actors and conduct to support their claims. Rather than pleading the particular facts necessary to support an inference of fraud, Plaintiffs ask the Court to permit discovery so they can look for them, which is precisely what Rule 9(b) forbids.

By Plaintiffs' own admissions, Kassam does not manage AFM. AFM cannot be tethered to this lawsuit by the alleged conduct of an individual who does not manage AFM and who Plaintiffs do not plead was acting for or on behalf of AFM. Plaintiffs allege that "Anson Funds" is managed by a single partner, Anson Management GP LLC, which Plaintiffs define as "Anson Management," and Plaintiffs then list Anthony Moore and Bruce Winson as the members and managers of "Anson Management." *See id.* ¶ 11; *see also* Tex. Bus. Orgs. Code Ann. § 1.002(35)(A)(ii) (recognizing a limited partnership's general partners as its governing authority). Plaintiffs acknowledge in the SAC that AFM is a separate corporate entity from AAI, incorporated and based in Texas, with entirely separate managers. *See* SAC ¶ 11. Any alleged conduct by Kassam cannot satisfy Plaintiffs' pleading burden as to AFM. As a Texas entity, AFM can only act through authorized individuals. *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 780 (5th Cir. 1997) (explaining that officers and directors have "no power" to act on behalf of a corporation "unless acting within the scope of their authority, or as part of a legally convened board of directors"). Moore and Winson are the only individuals the SAC alleges can plausibly control AFM. *See* SAC ¶ 11. And yet, they are not alleged to have done anything. AFM cannot be kept in this action when not a single allegation is attributable to the entity or any individual acting on its behalf.

Nor can AFM be kept in this action on a theory of vicarious liability through conclusory, unsupported allegations that Kassam served as a "director" of both "Anson Funds" and "Anson Advisors." *Id.* Vicarious liability can only exist when the principal has the right to control the agent's conduct. *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). That is a demanding standard. "To trigger vicarious liability, the right to control must extend to the specific activity from which the injury arose." *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 911–12 (Tex. App.—Ft. Worth 2009, pet. denied). And the control must be meaningful, "includ[ing] not only the right to assign tasks but the right to dictate the means and details of how the agent will complete these tasks." *Crooks v. M1 Real Est. Partners, Ltd.*, 238 S.W.3d 474, 491 (Tex. App.—Dallas

2007, pet. denied). The SAC does not meet this exacting standard. It does not allege that AFM has ever controlled Kassam, let alone with respect to the specific activity alleged. Nor does the SAC ever identify whether or when Kassam was acting as an AFM director. *See* SAC ¶¶ 11, 150; *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 482–83 (N.D. Tex. 2012) ("These conclusory allegations are insufficient to state a plausible claim that Perot Investments or Petrus are vicariously liable. As the Court has recognized, employees 'can and do 'change hats' to represent two corporations separately.'").

The SAC's apparent attempts to tie Sunny Puri to AFM are even less availing. Puri is not even alleged to be a director of AFM. Instead, Plaintiffs turn to obfuscation—referring to both Anson Funds Management LP and the distinct "equity funds that are managed by Anson Advisors" as "Anson Funds." *Compare* SAC ¶ 11, *with* ¶ 28. The "Anson Funds" referred to in paragraphs 28, 29, 34, and 35 of the SAC are the "pooled investment vehicles," SAC ¶ 13, that AAI advises, not AFM.

In sum, the SAC makes no allegation that AFM itself engaged in any misconduct. Instead, the SAC leaves both the Court and AFM to guess as to who is alleged to have done what. This collective pleading fails to provide even the fair notice required by Rule 8(a), and falls far short of satisfying Rule 9(b). The SAC should be dismissed as to AFM.

## IV. The SAC Should Be Dismissed for Failure to State a Claim.

The SAC should also be dismissed because it fails to state any claim for relief. To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation omitted). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Accordingly, "naked assertion[s] devoid of further factual enhancement" do not suffice. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))

(internal quotations omitted). Similarly, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The SAC does not meet this standard.

**A. *Plaintiffs fail to state a claim for business disparagement.***

To prevail on their business disparagement claim, Plaintiffs must establish: (1) the defendant published false and disparaging information about the plaintiff, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Bass v. United Dev. Funding, L.P.*, No. 05-18-00752-CV, 2019 WL 3940976, at *25 (Tex. App.—Dallas Aug. 21, 2019, pet. denied).

The SAC's allegations fail at element one. Plaintiffs allege "[t]he statements were disparaging to PolarityTE because, among other reasons, the statements accused PolarityTE of being a fraud and accused company management of criminal conduct." SAC ¶ 123. But because Plaintiffs allege the disparaging statements were made about non-party PolarityTE, Plaintiffs fail to state a claim. The SAC does not allege that any disparaging statements (or any statements at all) were made concerning plaintiffs GRQ Consultants, Inc. or Renee Honig Family Foundation, Inc. *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 671 (S.D. Tex. 2010) ("[S]ettled law requires that the false statement point to the plaintiff and to no one else. Whether a plaintiff is referred to in a statement is a question of law for the court." (citation and quotation omitted)). Moreover, even if it did, Plaintiffs fail to sufficiently allege that the statements were false (or that AFM acted with malice). In fact, Plaintiffs' own SAC *admits* the facts underlying the Citron Reports, including that "in 2018, the USPTO issued what is colloquially called a 'Final Rejection' of application" and "the FDA sent PolarityTE a list of 'inspectional observations' which in the investigators' judgment may potentially constitute violations of FDA standards." SAC ¶¶ 75, 98.

The only allegation in the SAC related to any of the actual Plaintiffs is that Citron's "statements about Plaintiff Honig were disparaging because, among other reasons, they falsely accused him of

being a 'stock promoter' for 'failed companies.'" SAC ¶ 123. Even ignoring the facts supporting Citron's statement, that allegation is insufficient for multiple reasons. First, statements made about Plaintiff Honig personally cannot support a business disparagement claim. *See AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 396 (W.D. Tex. 2023) (business disparagement is meant to "encompass[] falsehoods concerning the condition or quality of a business's products or services that are intended to, and do in fact, cause financial harm."). Second, Citron's statement that Honig was a "stock promoter" for "failed companies" is not a verifiable false statement, so it cannot support a claim for business disparagement. *See, e.g., Smith v. Textile Rental Servs. Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3565578, at *7 n.5 (N.D. Tex. Aug. 12, 2021) ("[W]hether Prova is 'patent-trolling' is an individual judgment that cannot be verified as false."); *Vice v. Kasprzak*, 318 S.W.3d 1, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (concluding that whether someone conducted "unethical business" was an individual judgment, not a statement of fact).[10] And third, none of the allegedly disparaging statements are attributed to AFM. Plaintiffs thus fail to satisfy the first element: that the defendant published false and disparaging information "about the plaintiff." *Bass*, 2019 WL 3940976, at *25.

Additionally, Plaintiffs fail to satisfy the fourth element: that they "personally incurred special damages." *Harrison v. Aztec Well Servicing Co.*, No. 1:20-CV-038-H, 2020 WL 5514129, at *7 (N.D. Tex. Sept. 14, 2020). A plaintiff "must plead that he personally incurred special damages for his business-disparagement claim to survive the defendants' motion to dismiss." *Id.* "'Special damages' is synonymous with 'economic damages' and refers to economic losses such as loss of sales, trade, or other business dealings." *Id.* Where a shareholder seeks to recover for business disparagement of a

[10] In related litigation, PolarityTE has acknowledged that short seller reports, including Citron's, reflected "opinion." *See* Defendants PolarityTE, Inc.'s and Denver Lough's Motion to Dismiss at 2 and 3–4, Dkt. No. 49, *In re PolarityTE, Inc. Sec. Litig.*, No. 2:18-cv-00510-HCN (D. Utah) ("Plaintiff points to short-seller reports that relied on public information to criticize the Company. But negative journalistic characterizations of public facts are not corrective—at most, they reveal the authors' opinions, not a previously hidden truth about supposed fraud."). The Court may take judicial notice of court filings when considering AFM's motion to dismiss. *See Basic Cap. Mgmt.*, 976 F.3d at 589.

corporation, this court has held it is the corporate entity—not the individual shareholder—who suffers any economic damages. *Harrison*, 2020 WL 5514129, at *8 (dismissing business disparagement claim because "[t]aking Harrison's pleading as true, it appears that Harrison Lease A&D, not Harrison personally, suffered economic damages."). Here, Plaintiffs allege in conclusory fashion that "Plaintiffs suffered general and special damages in an amount in excess of the jurisdictional minimum of this court, including damage to Plaintiffs' reputation and money damages." SAC ¶ 126. But "[d]efamation protects the reputational interests of an injured party whereas business disparagement protects economic interests." *Harrison*, 2020 WL 5514129, at *7.

The few references to Plaintiffs' alleged harm are also impermissibly conclusory. Plaintiffs claim that (i) they sold shares at prices allegedly affected by the Citron Reports and (ii) were unable to sell all the shares prior to bankruptcy, yet provide no factual allegations in support.[11] SAC ¶ 107; *see Sims v. Dallas Indep. Sch. Dist.*, No. 3:23-CV-00010-N, 2024 WL 495259, at *4 (N.D. Tex. Feb. 7, 2024) ("Conclusory allegations, without facts to support them, are not accepted as true for the purposes of deciding a motion to dismiss."); *see also Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 431 (S.D.N.Y. 2010) (allegations inadequate without factual details of trading).

Plaintiffs' allegations also ignore other intervening events, such as (i) the SEC's September 2018 antifraud action against, in the SEC's words, "a group of prolific South Florida-based microcap fraudsters led by Barry Honig"—including PolarityTE's then-CFO and others who were former executives and remained significant shareholders—who engaged in "classic pump-and-dump schemes" involving several other companies;[12] (ii) PolarityTE's March 2019 disclosure of an SEC

[11] AFM expressly reserves its right to request discovery related to Plaintiffs' relevant trading activity.
[12] Press Release, SEC, *SEC Charges Microcap Fraudsters for Roles in Lucrative Market Manipulation Schemes* (Sept. 7, 2018), available at: https://www.sec.gov/newsroom/press-releases/2018-182; *see Esquivel v. Fudge*, No. 3:22-CV-0556-L, 2023 WL 5658338, at *7 (N.D. Tex. Aug. 31, 2023) ("A court has the power to take judicial notice of the coverage and existence of newspaper and magazine articles, as well as the fact that the market is aware of information contained in news articles.").

investigation of the company, including a subpoena seeking "communications and agreements" with "Barry Honig" and "any promotion of the Company or its securities," which resulted in its stock dropping "more than 15 percent" in one day;[13] and (iii) the FDA's 2021 guidance which prohibited PolarityTE from selling SkinTE.[14] There is thus an "obvious alternative explanation" for PolarityTE's bankruptcy and the losses Plaintiffs assert. *Twombly*, 550 U.S. at 567.

Because Plaintiffs cannot recover for reputational damages and because Plaintiffs have not suffered any economic damages merely by virtue of being shareholders, Plaintiffs' claim for business disparagement should be dismissed.[15]

### B. *Plaintiffs fail to state a claim for tortious interference.*

Plaintiffs' tortious interference claim fails because Plaintiffs do not plead that AFM caused a breach of any contractual obligation. To succeed on a claim for tortious interference with contract under Texas law, a plaintiff must allege that "(1) he had a valid contract, (2) the defendants willfully and intentionally interfered with the contract, (3) the interference proximately caused [plaintiff's] injuries, and (4) he incurred actual damage or loss." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 749 (5th Cir. 2019). To allege interference, a plaintiff must "identify an actual breach of the contract" resulting from the alleged misconduct. *Walker*, 938 F.3d at 750 (affirming dismissal of complaint alleging tortious interference); *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 354 (5th Cir.

---

[13] PolarityTE, Inc., Transition Report (Form 10-KT), at 43 (Mar. 18, 2019) ("On September 7, 2018, the SEC filed a complaint … alleging that certain persons, including John Stetson, our former Chief Financial Officer and Chief Investment Officer, Barry Honig, who is also a current 5% shareholder of the Company, and Michael Brauser, who is also a current 5% shareholder of the Company, manipulated the price of securities of three public companies…. On March 1, 2019, we received a subpoena from the SEC requesting additional documents related to … communications and agreements between us and, among others, John Stetson, Barry Honig and Michael Brauser…. On March 4, 2019, we obtained from the SEC a copy of the formal order of investigation of the Company and its affiliates with respect to possible violations of the federal securities laws.…"), available at: https://www.sec.gov/Archives/edgar/data/1076682/000149315219003515/form10-kt.htm#a_002; Biotech's Shares Tumble After It Says SEC Is Looking into Possible Manipulation, CNBC (Mar. 18, 2019), available at: https://www.cnbc.com/2019/03/18/biotechs-shares-tumble-after-it-says-sec-is-looking-into-possible-manipulation.html.

[14] *See supra* note 4.

[15] Accordingly, even setting aside Plaintiffs' lack of standing, Plaintiffs' attempt to recover individually for alleged injury to PolarityTE creates fatal issues for their business disparagement claim.

2021) ("Our review of Texas law indicates that to prevail on an interference claim, the plaintiff must present evidence that some obligatory provision of a contract was breached.'" (citations and modifications omitted)).

Plaintiffs allege they "had a number of contracts with PolarityTE in connection with the company's issuance to them of preferred convertible shares," and that "Defendants intentionally interfered with these contracts" by improperly directing or causing the publication of the Citron Reports, "which affected the market price of PolarityTE stock, and in turn, the formula by which Plaintiffs could convert their preferred shares into common shares." SAC ¶¶ 130, 132. Plaintiffs do not allege that the purported interference caused Plaintiffs or PolarityTE to breach these contracts—they allege only that the value of their shares was affected. *See id.* Because Plaintiffs cannot identify any "obligatory provision of a contract [that] was breached," their tortious interference claim must be dismissed. *WickFire*, 989 F.3d at 354; *see also Nix v. Major League Baseball*, 62 F.4th 920, 935 (5th Cir. 2023) ("Nix does not allege any breach by himself or Golden. He therefore fails to state a claim for tortious interference with existing contractual relations.").

**C. *Plaintiffs fail to state claims for negligence and gross negligence.***

Plaintiffs' negligence claims fail because Plaintiffs do not plead any legal duty owed by AFM to Plaintiffs. "Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002). To recover for gross negligence in Texas, "a plaintiff must satisfy the elements of an ordinary negligence" claim *and* demonstrate clear and convincing evidence of "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *Austin v. Kroger Texas L.P.*, 746 F.3d 191, 196 n.2 (5th Cir. 2014).

Whether alleging ordinary or gross negligence, "[t]he threshold inquiry in a negligence case is duty." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 729 (5th Cir. 2002) ("The existence of a legal duty is a threshold inquiry, 'which is a question of law for the court to decide.'"). Here, Plaintiffs assert, without explanation, that "Defendants owed a legal duty to PolarityTE and Plaintiffs." SAC ¶¶ 136, 140. Plaintiffs allege no facts to support that conclusion, nor do they allege a special relationship that might create a legal duty. *Gomez*, 18 F.4th at 775 ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

Texas law plainly rejects Plaintiffs' theory: in Texas there is no free-standing duty not to defame or disparage. *Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2017 WL 606639, at *5 (N.D. Tex. Feb. 15, 2017) ("[A] plaintiff cannot maintain a negligence claim based solely on a duty not to defame." (citation and quotation omitted)). Likewise, in the context of the securities markets, courts have repeatedly held that parties owe no legal duty to investors at large. *See Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 386 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding securities underwriters did not owe a duty to investors who purchased securities from a separate broker-dealer); *Great Plains Tr. Co.*, 313 F.3d at 329 (holding a securities firm did not owe a duty to debtholders based on the firms' due diligence and fairness opinion prepared for issuer); *Kirk v. Precis, Inc.*, No. 2-05-297-CV, 2006 WL 3627119, at *4–5 (Tex. App.—Ft. Worth Dec. 14, 2006, pet. denied) (holding issuer did not owe a duty to investors who lost profits from issuers' actions). Indeed, "there is a comprehensive regime regulating the issuance and sale of securities, which argues against the need to extend tort liability to these situations." *Frank*, 11 S.W.3d at 386. The "application of tort liability is ill-suited to an arena where downside risk is a feature inherent in the concept of the securities market." *Id.*; *see also Kirk*, 2006 WL 3627119, at *4 (same).

Plaintiffs' negligence claims should also be dismissed because their allegations of harm are impermissibly conclusory and implausible.[16] Moreover, Plaintiffs inappropriately repackage their publication-based tort as negligence. Plaintiffs allege that Defendants breached a duty by coordinating to "publish false negative news about the targets via online social media and traditional news media, appearances on cable news programs, interviews, and mainstream news articles." SAC ¶¶ 137, 141. Texas courts have repeatedly rejected attempts to evade the requirements of publication torts—particularly those requiring a heightened showing of malice, as here—by relabeling the same alleged conduct as negligence. *See Klein & Assocs. Pol. Rels. v. Port Arthur Indep. Sch. Dist.*, 92 S.W.3d 889, 899 (Tex. App.—Beaumont 2002, pet. denied) ("[A]llegations of defamation are properly brought as a defamation claim, which would include here, as we have stated, the element of actual malice. As a matter of law, the negligence action is not proper."); *Oliphint v. Richards*, 167 S.W.3d 513, 517 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("Oliphint asserts that appellees owed him a duty not to defame him or supply false information about him to third parties. Appellees argue that such a claim is not a separate cause of action but merely a re-labeled defamation claim. We agree."). Plaintiffs' attempt to disguise one claim as multiple causes of action by "massaging the labels and language is impermissible." *Tacon Mech. Contractors, Inc. v. Aetna Cas. & Sur. Co.*, 65 F.3d 486, 488 (5th Cir. 1995).

Accordingly, Plaintiffs' negligence and gross negligence claims should be dismissed because AFM did not owe Plaintiffs a legal duty, Plaintiffs' harm allegations fail, and Plaintiffs' negligence claims are an impermissible attempt to repackage their business disparagement claim.

[16] *See supra* Section IV(A).

**D. *Plaintiffs fail to state a claim for civil conspiracy.***

Civil conspiracy is not an independent tort and thus "requires an underlying tort that has caused damages." *Tummel v. Milane*, 787 F. App'x 226, 227 (5th Cir. 2019). The elements are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Energium Health v. Gabali*, No. 3:21-CV-2951-S, 2023 WL 6392631, at *7 (N.D. Tex. Sept. 29, 2023). Plaintiffs' allegations proceed in only a conclusory manner, stating: "Each of Defendants entered into a conspiracy with each of the other Defendants and others as alleged herein to (i) disparage PolarityTE's and Plaintiffs' business and (ii) tortiously interfere with PolarityTE's and Plaintiffs' contracts, thereby harming Plaintiffs profiting from their short positions in PolarityTE securities' at a significant discount." SAC ¶ 146. Because Plaintiffs' business disparagement and tortious interference claims fail, so too does their conspiracy claim.

Further, Plaintiffs have not adequately alleged either the existence of a conspiracy or AFM's participation in one. Specifically, Plaintiffs fail to allege any meeting of the minds on the object or course of action or any unlawful, overt acts by AFM. Instead, each of Plaintiffs' conclusory allegations relate to "Defendants" and "Anson" (i.e., AFM and AAI collectively) without identifying any conduct by AFM. *See, e.g.*, SAC ¶¶ 25, 66, 69. Accordingly, Plaintiffs' conspiracy claim fails.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant AFM respectfully requests that this Court dismiss the Complaint with prejudice as to AFM.

Dated: July 24, 2026 Respectfully Submitted,

/s/ *Kenneth G. Coffin*

Kenneth G. Coffin
Texas Bar No. 24076986
kenneth.coffin@sidley.com
Natalie A. Piazza
Texas Bar No. 24125831
npiazza@sidley.com

SIDLEY AUSTIN LLP
2323 Cedar Springs Road, Suite 2600
Dallas, TX 75201
Telephone: 214.981.3300
Facsimile: 214.981.3400

Stephen L. Cohen (admitted *pro hac vice*)
scohen@sidley.com
Christopher R. Mills (admitted *pro hac vice*)
cmills@sidley.com

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: 202.736.8000
Facsimile: 202.736.8711

*Attorneys for Defendant Anson Funds Management LP*

**CERTIFICATE OF SERVICE**

On July 24, 2026, a true and correct copy of the foregoing document was served upon all counsel of record, by posting the document electronically to the ECF website of the United States District Court for the Northern District of Texas, for receipt electronically by the parties listed on the Court's Service List.

/s/ *Kenneth G. Coffin*